PATRICK E. HIGGINBOTHAM, Circuit Judge,
concurring:
The district court held that “[o]nce the Forest Service adopted a final, definite course of action or inaction with respect to the management of the forest lands (regardless of whether that action or inaction is memorialized in a written agency decision), the court has a ‘final agency action’ to review.” [1] It is this jurisdictional holding that we reverse today. A challenge to a “course of action or inaction with respect to the management of the forest lands” is the epitome of a “programmatic” challenge over which federal courts have no jurisdiction.[2]
We do not rule today on any issue besides jurisdiction. But the mere holding that the plaintiffs must challenge a final agency action does not describe what a proper complaint or trial would look like. While we do not reach the issue of whether any of the evidence presented or relief granted was proper or not,[3] I comment briefly on these issues to provide guidance to the trial court on remand.
Regarding allegations and proof, the plaintiffs must allege and prove that a specific timber sale[4] will violate the law. This is not a formalism. Once the plaintiff identifies a sale, it can then direct the court’s attention to those steps leading up to and including the sale’s implementation that render the sale illegal. In the initial stages of this litigation, the plaintiffs did this. They challenged the Forest Service’s LRMP and environmental impact statements — early steps in the process of forest management with forest-wide application. Sierra Club v. Espy[5] upheld their validity, agreeing with the Forest Service that even-age management does not violate the NFMA and NEPA.[6]
After Sierra Club v. Espy, the plaintiffs abandoned their sale-specific challenge to the Forest Service’s activities; they instead challenged on-the-ground conduct throughout the Texas National Forests. In doing so, they strayed beyond the jurisdiction of the federal courts. The next logical step would have been to challenge the site-specific decisionmaking by the Forest Service. This has at least two components: the procedure of creating a project implementation plan and drafting a contract of sale, and the actual implementation, on-the-ground, of the requirements contained in those documents.[7] These *571 components require different evidence: the former depends on the conformity of the documents to the controlling regulations and forest plans; the latter requires a fact-intensive inquiry into whether actual implementation conforms to those documents. More importantly, which of these components is the source of any alleged illegality will affect the scope and content of any injunction the court enters.
As this case demonstrates, a generalized challenge glosses over these distinctions. It leaves the district court with a Hobson’s choice: either entering an injunction that is too vague to distinguish between legal and illegal future sales, or devising some sort of prescriptive relief that may not address what is wrong with the challenged sales.[8]
On the other hand, requiring a challenge to final agency action does not straightjacket plaintiffs in presenting evidence on implementation. Since the implementation of a challenged timber sale necessarily has not occurred at the time of suit, evidence of improper implementation must come from past sales. Thus, there is nothing wrong per se with evidence of the Forest Service’s implementation of timber sales from past years. Nor is there necessarily any error in defendants presenting evidence from a single compartment and testifying that it is typical of Forest Service practice. What is important is that the plaintiffs must prove, and the trial court must find by a preponderance of the evidence, that the Forest Service will violate the law in executing or implementing the specific, challenged timber sale. The court does not have jurisdiction to grant relief to plaintiffs based on the generalized past practices of the defendants; evidence not probative of future violations should not be admitted.
Finally, as to remedy, a court may not enjoin an entire program, such as the selling of timber in the Texas National Forests. But a component of enjoining a discrete, challenged action is enjoining the conduct that makes the challenged actions illegal. Thus, an injunction directed at specific sales may prevent the completion of unnamed, future timber sales that share the illegality of the challenged sales.[9]
Unlike a programmatic challenge, a challenge to a specific timber sale would bring into focus the nature of the illegality the plaintiffs allegé. The actions taken by the Forest Service during the execution of a timber cut are made pursuant to Service’s site-specific “project implementation plan” and the provisions of the contract for the sale of that timber. Thus, a challenge to an announced timber sale would involve two prongs: either a challenge to the validity of any resulting project implementation plan or contract, or proof that the on-the-ground actions of the Forest Service will violate any valid project implementation plan or contract (which conforms to the regulations and LRMP).
In this case, the plaintiffs presented no evidence about project implementation plans or contracts. But a challenge to specific timber sales would require a ruling on the validity of any (existing or potential) project implementation plan or contract before the issue of on-the-ground implementation even arose. This places a greater burden on plaintiffs; but if they prove that those documents violate the regulations or the LRMP, or that the Forest Service cannot create a valid project implementation plan (for example, due to *572 failure to keep or make necessary records), plaintiffs need not even reach the issue of on-the-ground implementation.
Also, a suit and trial on specific timber sales will focus the attention of the parties on the issue of improper implementation of the regulations and LRMP. Much of the evidence at trial in this case revisited the validity of the regulations, LRMP, and even the practice of even-age harvesting. The plaintiffs presented evidence that conformity with the regulations and LRMP violated the law. This, of course, challenges not the implementation of the regulations and the LRMP, but their validity, which was settled by Sierra Club v. Espy. Given the validity of the regulations and the LRMP, the plaintiffs must prove that the on-the-ground actions of the Forest Service were inconsistent with the regulations and LRMP.

. Sierra Club v. Glickman, 974 F.Supp. 905, 914 (E.D.Tex.1997).

. See Lujan v. National Wildlife Federation, 497 U.S. 871, 891, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

. See maj. op. at 568-69.

. The announcement of a timber sale is a final agency action. We do not today address whether implementation of a timber sale also constitutes final agency action. See maj. op. at 568-69.

. 38 F.3d 792 (5th Cir.1994).

. Plaintiffs conceded, and the court held, that the scope of the preliminary injunction at issue was limited to nine identified timber sales. Id. at 798.

. At trial, the defendants presented testimony describing the development of the project implementation plan and timber sale contract preceding implementation. Plaintiffs, however, ignored these procedures. They neither argued that those documents violated the regulations or forest plans nor did they argue that the implementation of timber sales violated the project implementation plans or contracts.

. Cf. Sierra Club v. Glickman, 974 F.Supp. at 945 (weighing prospective injunction and prescriptive, retrospective injunction).

. See Lujan v. National Wildlife Federation, 497 U.S. at 894, 110 S.Ct. 3177 (citation omitted):
[W]e intervene in the administration of the laws only when, and to the extent that, a specific "final agency action” has an actual or immediate threatened effect. Such an intervention may ultimately have the effect of requiring a regulation, a series of regulations, or even a whole "program” to be revised by the agency in order to avoid the unlawful result that the court discerns.